## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2015, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Karen A. Wyle | David A. Smith |
| Bloomington, Indiana | McIntyre & Smith |
| | Bedford, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aundreia Dant, | October 30, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 51A01-1504-DR-128 |
| v. | Appeal from the Martin Circuit Court |
| Anthony J. Dant, | The Honorable Gregory A. Smith, Special Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 51C01-1310-DR-250 |

**May, Judge.**

[1]     Aundreia Dant ("Wife") appeals the division of marital property in the dissolution of her marriage to Anthony Dant ("Husband"). Finding no abuse of discretion, we affirm.

## Facts and Procedural History

[2]     Husband and Wife married in 1991 and the marriage was dissolved in 2014. Husband has served with the Martin County Sheriff's Department since 1985 and was the elected sheriff from 2003 through 2010. As elected sheriff, Husband earned about $85,000 per year. Afterwards his income decreased to about $32,000 as chief deputy, and then to about $28,000 as a patrol deputy, which was his position at the time of the dissolution hearing. Wife has been employed by General Motors since 1992 and since 2010 her annual earnings have been around $100,000.

[3]     Both parties had pension plans, the value of which they stipulated. Husband's was valued at about $1,100,000 and at the time of the dissolution he was drawing about $5000 per month. He also had a deferred compensation plan valued at about $112,000 and an IRA valued at about $107,000. Wife's GM pension was valued at about $117,000, but she cannot draw from it until she retires. At the time of the dissolution hearing she was forty-seven and she cannot retire until she is fifty-five. Wife also had a savings plan she characterized as a 401K, which was valued at about $293,000.

[4]     The parties owned four parcels of real estate. Two, including the marital residence, were awarded to Wife and the other two to Husband.

[5] The trial court allocated 69% of the net marital estate to Husband and 31% to Wife, but noted that "when assets husband had prior to the marriage . . . are excluded, the division is approximately 53% to husband and 47% to wife." (App. at 26.) Additional facts will be provided as necessary.

## Discussion and Decision

[6] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregarded evidence of factors listed in the controlling statute. *Id*. When we review a claim that the trial court improperly divided marital property, we consider only the evidence most favorable to the trial court's disposition of the property. *Id*. Even if the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id*.

[7] Division of marital property is highly fact sensitive and we review a trial court's discretion in dividing marital property by considering the division as a whole, not item by item. *Id*. We will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id*. The party challenging the division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id*. at 1012-13.

Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.* at 1013.

[8] All marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. *Id.* (citing Ind. Code § 31-15-7-4(a)). This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Id.*

[9] An equal division of marital property is presumed to be just and reasonable, but this presumption may be rebutted if a party presents relevant evidence regarding the following factors: (1) each spouse's contribution to the acquisition of property; (2) acquisition of property through gift or inheritance prior to the marriage; (3) the economic circumstances of each spouse at the time of disposition; (4) each spouse's dissipation or disposition of property during the marriage; and (5) each spouse's earning ability. *Id.* (citing Ind. Code § 31-15-7-5). When ordering an unequal division, the trial court must consider all of the factors set forth in the statute. *Id.* A trial court abuses its discretion in considering a factor in isolation from the other four factors, but it is not required to explicitly address each factor. *Id.* However, on review we must be able to infer from the trial court's findings that all the statutory factors were considered. *Id.*

[10] The trial court entered Findings of Fact and Conclusions of Law *sua sponte*.[1] In such a situation, the specific factual findings control only the issues they cover, and a general judgment standard applies to issues on which there are no findings. *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666 (Ind. Ct. App. 2013). It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id*. We may affirm a general judgment with *sua sponte* findings on any legal theory supported by the evidence introduced at trial. *Id*. Although *sua sponte* findings control as to the issues on which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. *Id*.

[11] As for review of the accuracy of findings that have been entered, we first consider whether the evidence supports them. *Id*. Second, we consider whether the findings support the judgment. *Id*. We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference. *Id*. A judgment also is clearly erroneous if it relies on

---

[1] The parties disagree as to whether the findings and conclusions were entered pursuant to a Trial Rule 52 motion or *sua sponte*. At the dissolution hearing the trial court referred to a motion for findings, and Husband's counsel said, "We apologize, Your Honor. We really meant proposed decrees." (Tr. at 115.) We will accordingly review the judgment as if the findings and conclusions were entered *sua sponte*.

an incorrect legal standard, and we do not defer to a trial court's legal conclusions. *Id*. at 998-99.

### *Wife's Contributions to Husband's Pension*

[12] The trial court awarded all of Wife's pension and employer profit-sharing plan to her, and it awarded all of Husband's pension, deferred compensation plan funds, and IRA to him. Wife argues the trial court erred because it ignored evidence of her "monetary and nonmonetary contributions to the accrual of Husband's pensions." (Br. of Appellant at 14.) We cannot find an abuse of discretion.

[13] Wife states *"[i]t is presumed* that where the parties were married while one accumulated pension eligibility, that pension was acquired through joint efforts," citing as authority for that statement *Elkins v. Elkins*, 763 N.E.2d 482, 485 (Ind. Ct. App. 2002). (Br. of Appellant at 14) (emphasis added). She next asserts "*[t]he presumption that spouses contribute to each others' pensions* is so strong" that even pensions vesting after legal separation are treated as marital property. (Br. of Appellant at 14) (citing *In re Marriage of Adams*, 535 N.E.2d 124, 127 (Ind. 1989), *reh'g denied*).

[14] Neither *Elkins* nor *Adams* establishes, or even acknowledges, a legal "presumption" that a spouse contributes to the other spouse's pension or that a spouse's pension is "presumed" to have been acquired through the spouses'

joint efforts.[2]  We must therefore decline to reverse on the ground there was a legal presumption in Wife's favor that Husband was obliged to rebut.

[15]  We acknowledge the evidence to which Wife directs us regarding her monetary and non-monetary contributions to the marriage, but we are aware of no authority supporting the premise the trial court was required to consider those contributions to be "contributions to the accrual of Husband's pension." (Br. of Appellant at 14.)[3]  As we will not substitute our judgment for that of the trial court even if the facts and reasonable inferences might allow for a different conclusion, *Love*, 10 N.E.3d at 1012, we cannot reverse on that ground.

### *The Family Farm*

[16]  There were four pieces of real estate included in the marital estate.  The marital home and a rental property were awarded to Wife, and a farm and property the couple bought from Husband's mother's estate were awarded to Husband. Wife challenges both awards to Husband.

---

[2]  *Adam*s says only "[i]t may be reasonably argued that in many marriages the joint efforts of both spouses are invested so that one of them may earn pension rights." *In re Marriage of Adams*, 535 N.E.2d 124, 127 (Ind. 1989).  The *Adams* Court found there was evidence Husband's pension was acquired by the parties' joint efforts, but it did not specify what that evidence was.

[3]  Wife suggests the trial court should have applied a coverture fraction, but she does not explicitly argue it was reversible error for the court to decline to do so.

The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses.  Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator of which is the total period of time during which pension rights accrued. *In re Marriage of Preston*, 704 N.E.2d 1093, 1098 n.6 (Ind. Ct. App. 1999).  As the trial court did not abuse its discretion in allocating the pensions as it did, it was not obliged to apply a coverture fraction.

[17]     Wife argues the trial court's allocation of property referred to as "the family farm" was an abuse of discretion[4] because its findings regarding the farm "ran largely or entirely counter to the undisputed evidence." (Br. of Appellant at 18.) The trial court awarded the farm to Husband after concluding it was purchased before the marriage with Husband's resources, Wife did not work on the farm or contribute to its upkeep, and Husband did not place Wife's name on the deed.

[18]     The trial court heard testimony from Wife that Husband bought the property shortly before he and Wife started dating. Husband testified he "bought and paid for it before [Wife] ever entered into the relationship with me." (Tr. at 82.) We acknowledge Wife offered ample evidence to the contrary, but we may not reweigh it or rejudge the credibility of the witnesses. The trial court's allocation of the farm was not an abuse of discretion.[5]

### *Property Treated as Inheritance*

[19]     The trial court allocated to Husband a residence Husband's mother owned and that Husband and Wife later bought from his mother's estate. In making the

---

[4] We remind Wife that a trial court's disposition of the marital estate is to be considered as a whole, not item by item. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002).

[5] The trial court's statement "there was no evidence" Wife worked on the farm or contributed to its upkeep, (App. at 21), appears incorrect, as Wife testified she did both. However, we decline to reverse on that ground.

We note the evidence on which Wife relies is her own testimony. It is within the province of the trial court to believe or disbelieve the testimony of any witness. *Inman v. Turner*, 27 N.E.3d 771, 774 (Ind. Ct. App. 2014), *trans. denied*. We further note Wife offers no legal authority to support the premise the trial court was obliged to credit her for her contributions to the farm after Husband bought it.

allocation, the trial court said "while not strictly an inheritance, the said real property is in the nature of an inheritance from Husband's family. I.C. 31-15-7-5(2)(B)." (App. at 21.)

[20] Wife notes the statute the trial court cited, which addresses evidence that can rebut the presumption an equal division of the marital property is just and reasonable, refers to "[t]he extent to which the property was acquired by each spouse . . . through inheritance or gift." Ind. Code § 31-15-7-5. Because the statute refers to property acquired by "each spouse," she argues, it cannot apply to property purchased by both spouses with marital funds. Therefore, she argues, "[t]reating this evidentiary factor as relevant to the cited statutory factor was error and an abuse of discretion." (Br. of Appellant at 20.)

[21] Even if the trial court erred in its suggestion the property was in the nature of inherited property, we cannot reverse on that ground. "It is well settled that when an error did not affect the substantial rights of the complaining party, such error will be considered harmless and not be grounds for reversal." *Cornett v. Cornett*, 412 N.E.2d 1232, 1236 (Ind. Ct. App. 1980).

[22] Wife asserts, without explanation or citation to the record or to legal authority, that the trial court "did not award Wife any other marital assets, or relieve her from any other marital debt, to compensate for this award." (Br. of Appellant at 20.) The dissolution decree indicates the property had a fair market value of $120,000, and mortgage indebtedness of $120,000, both of which we were

assigned to Husband.  We cannot say Wife was prejudiced to the extent the trial court declined to "compensate" her for that award.

### Trial Court's "Intentions"

[23] As explained above, we find no abuse of discretion in the trial court's distribution of the marital assets.  Wife does not point to any specific mathematical errors in that decree, but she appears to argue the trial court "did not intend such an unequal disposition as it actually imposed." (Appellant's Reply Br. at 13.)  We decline to find reversible error on the premise the trial court did not know what it was doing or intend to do what it did.

[24] The trial court's decree included a detailed three-page listing of each debt and asset, what each was worth, and how each was disposed.  It calculated the "net marital estate," (App. at 31), and indicated 69% was allocated to Husband and 31% to Wife.  On a separate line after that, it listed amounts and percentages Wife characterizes as numbers "purporting to show the percentage each spouse would have received if the marital estate had not included" certain real estate. (Br. of Appellant at 21.)  Those numbers reflected a percentage distribution of 53% to Husband and 47% to Wife.

[25] We decline to hold the trial court's intention was reflected by what it did not do rather than what it did do, and absent a showing of a mathematical miscalculation, we find no error.  *See In re Marriage of Perez*, 7 N.E.3d 1009, 1012 (Ind. Ct. App. 2014) (Wife's arguments that the trial court did not give sufficient weight to the income disparities of the parties and her allegation her

testimony was more credible than Husband's were invitations for us to reweigh the evidence and judge witness credibility, which we cannot do.).

### *The Parties' Future Income Streams*

The trial court allocated to Husband all of his pension and to Wife all of hers, and valued each pension at the amount to which the parties stipulated. Wife now appears to argue error because the trial court made "optimistic assumptions," (Br. of Appellant at 23), about her future earning ability, but it did not make equally optimistic assumptions about Husband. We decline to find an abuse of discretion in the trial court's acceptance of the pension values to which the parties stipulated, nor do we find the trial court's "assumptions" necessarily amount to unreasonable inferences the trial court might have drawn from evidence of Husband's and Wife's ages, earning history, and career prospects. As we will not substitute our judgment for that of the trial court even if the facts and reasonable inferences might allow for a different conclusion, *Love*, 10 N.E.3d at 1012, we decline to reverse on that ground.

# Conclusion

As the trial court's distribution of the marital property was supported by the record and was not an abuse of discretion, we affirm.

Affirmed.


Crone, J., and Bradford, J., concur.