## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 14 2020, 9:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Thomas B. O'Farrell | Christopher J. Evans |
| McClure \| O'Farrell | Dollard Evans Whalin LLP |
| Indianapolis, Indiana | Noblesville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| P.G., | April 14, 2020 |
| *Appellant-Respondent,* | Court of Appeals Case No. 19A-DR-2177 |
| v. | Appeal from the Hamilton Superior Court |
| M. G., | The Honorable Michael A. Casati, Judge |
| *Appellee-Petitioner* | Trial Court Cause No. 29D01-1511-DR-9608 |

**Crone, Judge.**

# Case Summary

P.G. ("Mother") appeals the trial court's order which addressed, among other things, cross-petitions for modification of child custody and parenting time regarding A.G., the minor child Mother shares with her ex-spouse, M.G. ("Father"). Mother contends that the trial court abused its discretion in admitting certain evidence at the modification hearing and in modifying the original custody order and granting primary physical custody of A.G. to Father. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

A.G. was born to Mother and Father on August 15, 2013. Mother and Father married approximately two years later on June 20, 2015. Less than six months after the marriage, the parties separated, and Father petitioned for dissolution of the marriage in November 2015. In March 2017, the parties entered into a settlement agreement wherein they agreed to share joint legal custody of A.G., with Mother having primary physical custody. The trial court approved the settlement agreement and incorporated it into the dissolution decree on March 27, 2017.

In June 2018, Father filed a motion for leave to perform discovery seeking discovery of certain records and information related to Mother's medical and mental health treatment following the dissolution of the marriage. Father cited his concerns surrounding what appeared to be a decline in Mother's mental health since the dissolution, and its impact on the welfare of A.G. while in

Mother's care. The motion provided that the discovery was an attempt to avoid the filing of a premature or unnecessary petition for custody modification in the hopes that the discovery would alleviate Father's concerns. The trial court granted Father's motion permitting discovery of the records.

[4] Thereafter, in August 2018, Father filed a petition to modify child custody and parenting time. Father alleged that there had been a substantial and continuing change in Mother's mental health, including her lack of honesty with Father about the same, and that it was in A.G.'s best interests for Father to be granted primary physical custody. Father also filed a petition for release of Mother's mental health records and a motion for rule to show cause stating that Mother had refused to release the records despite previous requests and court orders. Mother filed an objection to Father's petition for release of her mental health records as well as motion for a protective order. Mother subsequently filed a cross-petition for modification of child custody seeking, in addition to physical custody, full legal custody of A.G.

[5] The trial court held a hearing on the parties' cross-petitions for modification of child custody and Father's motion for rule to show cause on August 16, 2019. On September 9, 2019, the trial court entered its order which stated in relevant part:

> 25. LEGAL CUSTODY: The parties shall continue to share joint legal custody of the minor child.
>
> 26. PHYSICAL CUSTODY: Physical custody shall be modified such that Father shall receive primary physical custody of the

minor child.

27.   PARENTING TIME:   Mother shall receive parenting time in accordance with the Indiana Parenting Time Guidelines, which are incorporated herein by reference, and which the parties are ordered to follow. As a modification to the guideline parenting time, the Sunday of Mother's weekend parenting time shall be overnight with Mother taking the minor child to school the following Monday morning.

a. Mother shall not permit [A.G.'s] maternal grandfather to drive [A.G.] or to provide sole care for [A.G.]

b. Mother shall comply with her treatment recommendations of her therapist and the person who prescribes her medication.

c. If Mother seeks in-patient treatment or takes a leave of absence from work she must immediately inform Father.

….

31. Mother is in contempt for her knowing and willful failure to comply with the Court's Order and for failing to offer the opportunity for additional parenting time to Father. …

32. Due to Mother's actions in hiding information from Father, fighting and objecting at every step of the process to provide Father with relevant and necessary information about her treatment and due to Mother's contempt, Mother shall pay a portion of Father's reasonable attorney fees in the amount of $2,500.00 within 120 days of the Court's Order. The same to be reduced to a judgment in the event it is unpaid. The Court finds that based upon the evidence presented, Mother has the ability to pay the ordered attorney's fees.

Appealed Order at 6-8 (underlining omitted).  This appeal ensued.

# Discussion and Decision

## Section 1 – Mother was not prejudiced by the admission of certain evidence.

[6]  Mother first asserts that the trial court abused its discretion in admitting certain medical and mental health records into evidence during the modification hearing over her hearsay objections. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re S.W.*, 920 N.E.2d 783, 788 (Ind. Ct. App. 2010). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). "[E]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party.'" *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the finder of fact. *Id*.

[7]  Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Although hearsay evidence is generally inadmissible, *see* Ind. Evidence Rule 802, Father sought admission of the challenged medical and mental health records pursuant to Indiana Evidence Rule 803(6). That rule provides that the following records are not excluded as hearsay regardless of whether the declarant is available as a witness:

> **Records of a Regularly Conducted Activity**.  A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10)[1] or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Ind. Evidence Rule 803(6). "In essence, the basis for the business records exception is that reliability is assured because the maker of the record relies on the record in the ordinary course of business activities." *In re Termination of Parent–Child Relationship of E.T.*, 808 N.E.2d 639, 643 (Ind. 2004).

[8] On appeal, Mother does not claim that the entirety of her medical and mental health records constituted inadmissible hearsay.  Rather, she contends that

---

[1] Mother concedes that the challenged documents were properly authenticated by affidavit of the custodian of records pursuant to Indiana Evidence Rule 902.

certain portions of the records were inadmissible pursuant to the business records exception because they contained medical opinions and/or diagnoses regarding her mental health. Our supreme court has stated, "Although Rule 803(6) accommodates the inclusion of 'opinions' in business records our courts have long recognized, at least in the context of medical or hospital records, that the expertise of the opinion giver must be established." *Id*. at 644 (citing *Fendley v. Ford*, 458 N.E.2d 1167, 1171 n.3 (Ind. Ct. App. 1984) ("Expressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion.")). Mother complains that Father did not call the opinion givers to testify and establish their expertise, and their opinions were not subject to cross-examination.

[9] To the extent that the medical records here contained certain inadmissible hearsay expressions of opinion regarding Mother's mental health, Mother has not demonstrated that she suffered prejudice. It is well settled that the improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment. *E.T.*, 808 N.E.2d at 646. Based upon our thorough review of the record before us, we are confident that the trial court need not have relied upon the questioned evidence to arrive at its custody modification decision. As we discuss more fully below, we conclude that there is ample independent evidence

provided by the other portions of the questioned documents, as well as witness testimony, to support the trial court's order. Accordingly, any error in the admission of the records was, at most, harmless.

## Section 2 – The trial court did not abuse its discretion in modifying the original custody order.

[10] Mother contends that the trial court abused its discretion when it modified the original custody order and granted Father primary physical custody of A.G. We review custody modifications only for an abuse of discretion. *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. There is a well-established preference in Indiana for granting significant latitude and deference to our trial judges in family law matters. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Therefore, on appeal we will not "reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We will reverse the trial court's custody determination only if the decision is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. "[I]t is not enough that the evidence might support some other conclusion, but it must

positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk*, 770 N.E.2d at 307.

[11] Indiana Code Section 31-17-2-21 provides that a trial court may not modify an existing custody order unless (1) the modification is in the best interests of the child, and (2) there has been a substantial change in one or more statutory factors that are outlined in Indiana Code Section 31-17-2-8. Those factors are:

> (1) The age and sex of the child.

> (2) The wishes of the child's parent or parents.

> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

> (4) The interaction and interrelationship of the child with:

> (A) the child's parent or parents;

> (B) the child's sibling; and

> (C) any other person who may significantly affect the child's best interests.

> (5) The child's adjustment to the child's:

> (A) home;

> (B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian ....

Ind. Code § 31-17-2-8.

[12] In interpreting section 31-17-2-21, this Court has held that "all that is required to support modification of custody ... is a finding that a change would be in the child's best interests, a consideration of the factors listed in I.C. § 31–17–2–8, and a finding that there has been a substantial change in one of those factors." *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003). Here, it appears that neither party requested special findings under Indiana Trial Rule 52(A). Instead, the parties submitted proposed orders. We therefore treat the trial court's order as sua sponte findings of fact. *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006). "As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). We review any remaining issues under the general judgment standard, where the judgment will be affirmed if it can be sustained on any legal theory consistent with the evidence. *Id.* "[W]e may look both to other findings and beyond the findings to the evidence of record to determine if the result is

against the facts and circumstances before the court." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666.

[13] Here, there is ample evidence in the record to establish that a change in custody was in A.G.'s best interests due to a substantial change in Mother's mental health, as well as Mother's lack of transparency regarding recent declines in her mental health. Witness testimony, which included the parties, Mother's sister, and Mother's therapist, indicates that Mother has attempted suicide since the original custody order was entered, and that she suffers from continued suicidal ideation and depression. She has been hospitalized and has taken leaves of absence from work due to the decline in her condition. The record further establishes that Mother has not been forthright with Father, her therapist, or the trial court regarding her mental health. During her testimony, Mother continued to downplay the seriousness of her depression and suicidal ideation, describing suicide as a "[v]ery fluid" concept in medical terms. Tr. Vol. 2 at 142-44. Rightfully so, the trial court expressed "substantial concerns" regarding Mother's "lack of honesty/self-awareness of her mental health history and condition." Appealed Order at 6. The evidence supports a finding that a decline in Mother's mental health, and her lack of transparency about it, constitutes a substantial change in circumstances.

[14] Still, Mother maintains that "there is no evidence" that the recent change in her mental health has "had any effect whatever[sic] on A.G." Appellant's Br. at 26. Simply put, this assertion is incorrect. As noted by the trial court, Mother's extreme denial regarding the seriousness of her decline in mental health since

the dissolution is evident from her November 2018 hearing testimony that she "did not think it was dangerous for [A.G.] to have a suicidal parent." Appealed Order at 4. Indeed, her denial continued during the modification hearing when she admitted that A.G. had declared concern for her prior to Mother's hospitalization by stating, "Mommy, I just want you to live," despite supposedly knowing nothing about, and being unaffected by, Mother's depression and thoughts of suicide. Tr. Vol. 2 at 120. Moreover, the record establishes that Mother has continually tried to hide her struggles from Father rather than considering what is best for A.G.[2] The evidence is clear that not only has Mother's decline in mental health affected A.G., but Mother's complete failure to acknowledge the decline has negatively affected A.G. This evidence convinced the trial court, and convinces us, that a change in the current custody arrangement is in A.G's best interests.

[15] Rather than challenging the evidence supporting the trial court's custody modification, Mother simply and repeatedly asserts that we must reverse the trial court's modification order because it "lacks the requisite findings" that there has been a substantial change in one of the enumerated statutory factors and that a change in custody would be in A.G.'s best interests. Appellant's Br. at 22, 26. Contrary to Mother's assertion, absent a request by a party, the trial court does not have to enter special findings that specify which factor(s) has substantially changed and explain why a change in custody is in the best

---

[2] The record indicates that Mother participated in extended inpatient treatment without notifying Father and allowing Father to aid in caring for A.G. by exercising parenting time.

interests of the child. *In re Paternity of P.R.*, 940 N.E.2d 346, 351 (Ind. Ct. App. 2010). The trial court's modification order is supported by the evidence.[3] Because Mother has failed to show that the court's order is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom, we affirm.

Affirmed.

Bailey, J., and Altice, J., concur.

---

[3] The trial court's modification order provided that, during her parenting time, "Mother shall not permit [A.G.'s] maternal grandfather to drive [A.G.] or to provide sole care for [A.G.]" Appealed Order at 7. Mother claims that the trial court violated and/or interfered with maternal grandfather's due process rights by entering such order without notice and an opportunity to be heard. In essence, Mother seeks to enforce the rights of a third person who is not a party to this action. She may not do so. Constitutional rights are personal to an individual, and Mother cannot claim a violation of maternal grandfather's due process rights on his behalf. *Richardson v. Richardson*, 34 N.E.3d 696, 702, n.3 (Ind. Ct. App. 2015).